(No. S-88-50 — Decided
November 3, 1989.)

*J.L. Stearns* and *Max E. Rayle,* for
appellant.

*Gerald R. Kowalski,* for appellee.

HANDWORK, P.J. Appellant, Gertrude Kreais, administratrix of the estate of Larry C. Kreais, brought an action in the Sandusky County Court of Common Pleas alleging that three different defendants had some liability for the tractor rollover which caused the death of Larry Kreais. All three defendants, Chemi-Trol Chemical Co. ("Chemi-Trol"), Ford Tractor & Implement Operations, Ford Motor Co. ("Ford"), and Streacker Tractor Sales, Inc. ("Streacker"), filed motions for summary judgment. At the conclusion of a hearing held on the motions, the trial court denied summary judgment for two of the defendants. The court granted summary judgment for Chemi-Trol, the decedent's employer, ruling that the evidence before the court was insufficient to meet the requirements for proving an intentional tort was committed by the employer. The court's ruling was journalized in an entry indicating no just cause for delay, and an appeal to this court was timely filed.

Appellant raises one assignment of error which states:

"The trial court erred in granting summary judgment of dismissal to the employer since reasonable minds could conclude from the evidence of record that an intentional tort had occurred which resulted in the death of plaintiff's decedent."

Before a trial court can properly grant a motion for summary judgment, it must determine the following three things:

"* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, 8 O.O. 3d 73, 74, 375, N.E. 2d 46, 47.

In the case at bar, the first item was easily determined. Since Chemi-Trol conceded to the facts as presented

by appellant, no material fact remained in dispute. However, the second and third items remained to be determined. Chemi-Trol argued that the second and third items necessary for a summary judgment were present, because the undisputed facts were not sufficient to show the employer acted with intent. The trial court agreed that no intentional tort was demonstrated and granted summary judgment. On appeal, appellant argues that the second and third items necessary for summary judgment do not exist in this case, as the evidence presented can lead reasonable minds to more than one conclusion. Accordingly, we must consider the test for labeling an employer's conduct an intentional tort and then determine whether reasonable minds considering the evidence presented most favorable to appellant could only conclude that no intentional tort has been shown.

The Supreme Court of Ohio has set forth a three-prong test for determining whether the actions of an employer constitute implied intent in an intentional tort suit. Those three prongs are:

"* * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489, paragraph five of the syllabus.

The facts to which this three-prong test must be applied are as follows: Chemi-Trol is a business entity which performs several functions, including marketing a service of spraying roadsides with herbicides to inhibit the growth of weeds. In 1986, Chemi-Trol dispatched some employees, among them Larry Kreais, to do roadside spraying in Columbus, Ohio. The areas to be sprayed had previously been inspected by one of Chemi-Trol's salespersons, and recommendations were made to Chemi-Trol by that salesperson regarding the method of application to be used in the Columbus area. The choices for methods of application of the herbicides included spraying from a truck, spraying from a tractor, and hand spraying. Kreais was designated as temporary foreman in charge of completing Chemi-Trol's operations in the Columbus area.

While some discretion apparently rested with the foreman and employees regarding the method of application to be used, the recommendations of the salesperson were generally followed so that a job could be completed within a specified time. Further, the foreman and employees were to use hand spraying on terrain that was unsuitable for the truck or tractor. However, testimony elicited by appellant indicates that the amount of danger posed by the terrain was not always ascertainable by a mere visual perusal of the land, and no specific safety instructions were given. Furthermore, the amount of time required for various methods of application was of concern, both to the employer and the employee.

On July 21, 1986, while operating a tractor on a slope alongside I-70 in Columbus, Ohio, Larry Kreais was killed when the tractor overturned and landed on him. The tractor was provided by Chemi-Trol, which had equipped the tractor with two tanks that were attached to the back of the tractor and connected to a series of nozzles to facilitate the transportation and application of herbicide. The trac-

tor was not equipped with a rollover protective structure ("ROPS") due to specific instructions from Chemi-Trol at the time of purchase, 1985, that the ROPS be removed from the tractor, even though federal regulations of OSHA required ROPS. See Section 1928.51, Title 29, C.F.R. A committee of four men, responsible for purchasing the tractor for Chemi-Trol, had made the conscious decision to order the tractor without a ROPS. These four men were aware that tractors slip and can roll over. They were aware the tractor would be used on slopes. They were aware that ROPS are designed to protect tractor operators in the event a tractor does roll over. And they were aware that some prior rollovers resulting in injuries had occurred with other tractors owned by Chemi-Trol and operated by Chemi-Trol employees. Furthermore, one of the four men admitted that he was aware, at the time the tractor was purchased, that when a tractor without a ROPS rolls over, it could cause death or injury. On the basis of these facts, we hold that reasonable minds could conclude that evidence exists that an intentional tort was committed by Chemi-Trol.

First, Chemi-Trol's officers had knowledge that driving a tractor over various types of terrain at a regulated speed to facilitate even distribution of herbicide on roadsides is not without danger. Indeed, more than one of these men testified they had been involved in or had witnessed prior tractor rollovers which occurred during Chemi-Trol operations. In addition, their testimony indicates a knowledge that a ROPS is designed to protect a tractor operator from injury or death in the event of a rollover, and that injury or death can result from a rollover. Reasonable minds could conclude from this evidence that Chemi-Trol knew of the existence of a dangerous process, procedure, instrumentality or condition within its business operation, and, in fact, Chemi-Trol states in its brief to this court that the danger is not disputed.

Second, the depositions of Chemi-Trol's officers and employees demonstrate an awareness that substantial injuries or death can occur when a tractor without a ROPS is overturned. Chemi-Trol vigorously asserts that this awareness did not constitute a substantial certainty that its employees would be harmed or killed in the course of their employment with Chemi-Trol. Chemi-Trol further asserts that "the chance of being injured in a rollover is exceedingly remote" and that no intent to injure employees existed since appellant is only able to demonstrate that three other rollovers occurred at Chemi-Trol in thirty-four years of operation prior to 1986. Chemi-Trol argues that the decision to omit the ROPS from the tractor is at most negligence or recklessness, but not intentional.

The focus of the substantial certainty test set forth in *Van Fossen* is not only how often the accident will occur, but also takes into consideration the employer's knowledge of certain death or injury to an employee when the accident does occur. See *Van Fossen, supra,* at 112, 522 N.E. 2d at 500-501. See, also, *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 139, 522 N.E. 2d 477, 481. Thus, even though appellee is correct that the occurrence of tractor rollovers at Chemi-Trol had not been frequent, appellee is not correct that this fact alone is determinative of substantial certainty. The record is replete with other facts to be considered. Chemi-Trol had knowledge that its tractors without ROPS would be driven on different terrains, including slopes. Chemi-Trol had knowledge that under normal business conditions its tractors could and did slip and tip. Chemi-Trol

admitted knowledge that a rollover on a tractor not equipped with ROPS could result in death or injury. Appellant has compiled testimony indicating that injuries as serious as cracked ribs, a scratched lung, and torn and bruised ligments were sustained in a 1968 rollover, one of the three rollovers experienced during thirty-four years of operation at Chemi-Trol prior to 1986. The certainty that injury or death would occur has been admitted by at least one Chemi-Trol employee responsible for ordering the tractor without ROPS and has been demonstrated by expert testimony provided by appellant's witness, as well as by empirical data. See, *e.g.,* 40 Fed. Reg. 18,254 (codified at Section 1928.51, Title 29, C.F.R.) (projection of sixty deaths, twenty permanent and four hundred fifty temporary injuries per every reported one thousand rollovers). Chemi-Trol's argument that appellant has failed to show intent because appellant's expert used the term "gross negligence" to describe Chemi-Trol's actions is irrelevant, as the determination of whether intent existed does not rest with the expert, it rests with the trier of fact. Therefore,

when all these facts are considered together, appellant has produced sufficient evidence to allow reasonable minds to conclude that Chemi-Trol did possess knowledge that with substantial certainty more than a high risk existed that harm in the form of injury or death could be inflicted on employees who continued to operate tractors not equipped with ROPS for Chemi-Trol.[1]

Third, the record contains adequate evidence to allow reasonable minds to conclude that Chemi-Trol acted to require its employees to continue to perform the dangerous task, with full knowledge of the danger and substantial certainty of injury or death. No tractors with ROPS were available to Chemi-Trol employees at the time of Kreais's employment. The use of tractors without ROPS on all types of roadside terrain was customary and was expected since hand application was much more time-consuming than tractor application. Time required for application was very important since bids were placed and contracts formed on the basis of the salesperson's estimates regarding the allowance of time and product required to complete a job.[2] The amount of slope

---

[1] Chemi-Trol cites *Pariseau* v. *Wedge Products, Inc.* (1988), 36 Ohio St. 3d 124, 522 N.E. 2d 511 (*per curiam*), in its discussion of the development of the *Van Fossen* intent test, and apparently further relies on the facts of *Pariseau* to substantiate the argument that probability of an accident occurring equates to substantial certainty in employer intentional tort cases. The facts of *Pariseau* are distinguishable since *Pariseau* involved poor maintenance amounting to negligence, rather than an intentional decision not to equip a machine with federally mandated safety devices. Furthermore, our finding that the occurrence of an accident is not the sole determinative factor of substantial certainty is supported by the following language from *Pariseau:*

"* * * If the actor knows that the *consequences* are certain, or substantially certain, to result from his act and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. * * *" (Emphasis added.) *Id.* at 128, 522 N.E. 2d at 515-516.

[2] Further, the record before this court includes testimony that Kreais had been advised that the time and material estimates had been overrun on the Columbus job and that a discussion regarding the time required to complete the contract had occurred between Kreais and the general manager of the chemical division during the week prior to Kreais's fatal accident.

was not taken into consideration when the method of application was recommended, and employees were given no safety training to assist them in determining that a slope was too dangerous to use a tractor. The general practices of Chemi-Trol could therefore lead reasonable minds to conclude that Kreais felt compelled to use a tractor for herbicide application since time was of the essence and the severity of the slope was not readily apparent.

Therefore, after careful consideration of the information presented in opposition to the motion for summary judgment, we hold that reasonable minds can reach more than one conclusion and summary judgment is not appropriate as a matter of law in this case. In reaching this holding, we do not weigh the evidence or determine the merits of the case on the basis of the evidence. See *First National Bank of Toledo* v. *Martenies* (Sept. 29, 1989), Lucas App. No. L-88-251, unreported. We find appellant's sole assignment of error well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is reversed. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed.*

GLASSER and ABOOD, JJ., concur.