**MOORE**

v.

**BARON DRAWN STEEL CORPORATION et al.**

1998-Ohio-719.]

Court of Common Pleas of Ohio,
Lucas County.

No. CI95–0589.

Decided June 4, 1998.

114

Contrada & Associates, Charles Contrada and Russell Jones, for plaintiff.

Marshall & Melhorn, James H. Irmen and Roman Arce, for defendant Baron Drawn Steel Corporation.

Timothy Cleary and Michael Golding, for defendant Laidlaw Environmental Services, Inc.

Shumaker, Loop & Kendrick, L.L.P., Stephen Rothschild and Jennifer Belt, for defendant Keramchemie.

CHARLES J. DONEGHY, Judge.

{¶ 1} This industrial accident case is before the court on the motion for summary judgment filed by defendant Baron Drawn Steel Corporation ("Baron"). Upon review of the pleadings, evidence, memoranda of the parties, and applicable law, the court finds that it should grant the motion.

## I. FACTS

{¶ 2} On or about October 29, 1994, the plaintiff Barbara Lou Moore's deceased husband, Larry Moore, sustained fatal injuries when he fell into a vat of 190° Fahrenheit steel-treating solution while attempting to rescue Baron's plant general foreman, John West. West had fallen into the same vat. At the time of his accident, Moore was working on Baron's "clean and coat" line.[1] The line consisted of eleven tanks (13′ long × 6 1/2′ wide × 7 1/2′ deep) filled with various liquids in which coils of steel were dipped by an overhead crane to prepare them for further processing. In between each set of adjacent tanks, and running the full 13′ length of the tanks, were 2′ wide steel drip trays. These drip trays were often made slippery by moisture from the tanks; however, management and hourly workers regularly used these drip trays as walkways while in the normal course of their duties. West fell into one of the dip tanks when he misstepped as he traversed a drip tray on his way to the back of one of the tanks.[2] At the time of West's fall, Moore was preparing that same tank for draining; he was standing

---

1. Baron is in the business of preparing steel for manufacturing at other facilities.

2. West was going to the back of the dip tank in order to feed a vacuum drain hose into the tank; the vacuum hose was connected to a tanker truck provided by defendant Laidlaw Environmental Services, Inc. ("Laidlaw").

on a catwalk that was several feet below the front of the clean and coat line of tanks. Moore did not observe West fall into the dip tank. After he fell, West yelled, "Help get me out." In response, Moore leapt onto the drip tray from which West had fallen. This was the first and only time that Moore ventured onto a drip tray at Baron.[3] When Moore reached out to West, West pulled Moore into the scalding tank. Other workers pulled West from the tank several minutes after he fell in. Then, after an unexpected delay, the operator of Baron's overhead crane lowered the crane's arm ("crane spreader") and Moore climbed onto it. Moore climbed off the crane spreader after the crane operator raised it and moved it over the drip tray. Moore walked off the drip tray under his own power. Moore and West died the next day as a result of their injuries. These two falls were the first such incidents involving the clean and coat tanks in the roughly seven years that Baron had been using the tanks.

{¶ 3} The plaintiff filed this action against Baron, asserting a workplace intentional tort claim. The plaintiff also has sued defendant Keramchemie, the company that designed the clean and coat line, and Laidlaw, an independent contractor whom Baron used to dispose of the clean and coat liquids. Baron has moved for summary judgment on the claim against it.

## II. SUMMARY JUDGMENT STANDARD

{¶ 4} The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46, the Supreme Court of Ohio stated the requirements that must be met before a Civ.R. 56 motion for summary judgment can be granted:

{¶ 5} "The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

{¶ 6} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

{¶ 7} A party who claims to be entitled to summary judgment on the grounds that a nonmovant cannot prove its case bears the initial burden of (1) specifically

---

**3.** Moore had over 25 years of service at Baron. (Baron's answer to plaintiff's first interrogatory.) " * * * Moore believed that walking on drip trays was dangerous and said it was something he would not do. (Plaintiff's Depo., at 23 and 104 [sic].)" (Plaintiff's memorandum in opposition to motion for summary judgment, at 8.)

identifying the basis of its motion and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; see, also, *Dresher,* 75 Ohio St.3d at 299, 662 N.E.2d 264 (Pfeifer, J., concurring in judgment only). The movant satisfies this burden by calling attention to some competent summary judgment evidence, of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. at 293, 299, 662 N.E.2d 264. Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. Id. at 293, 662 N.E.2d 264. Accord *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798.

## III. DISCUSSION

### A. STANDARD FOR WORKPLACE INTENTIONAL TORT LIABILITY

{¶ 8} Actions against employers for injuries sustained by employees in the course of employment generally must be brought under the Ohio Workers' Compensation Act. *Richie v. Rogers Cartage Co.* (1993), 89 Ohio App.3d 638, 643, 626 N.E.2d 1012. "An employee, however, may recover at common law for injuries sustained as a result of the intentional conduct of his [or her] employer." Id., citing *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 522 N.E.2d 477; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. The Supreme Court of Ohio has defined "intentional tort" as either "an act committed with the intent to injure another," or, as is applicable in this case, an act committed "with the belief that such injury is substantially certain to occur." *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, paragraph one of the syllabus.

{¶ 9} In *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the Supreme Court of Ohio set forth a three-prong test to determine "intent" in the workplace. In pertinent part the court stated as follows:

{¶ 10} "[I]n order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) *knowledge* by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a *substantial certainty*; and (3) that

the employer, under such circumstances, and with such knowledge, did act to *require* the employee to continue to perform the dangerous task." (Emphasis added.) Id. at paragraph one of the syllabus.

{¶ 11} To establish "intent," the employee must prove "that the employer had 'actual knowledge of the exact dangers which ultimately caused' injury." *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, citing *Van Fossen*, 36 Ohio St.3d at 112, 522 N.E.2d 489. However, the employee need not prove that the employer had an actual subjective intent to injure, *Richie*, 89 Ohio App.3d at 644, 626 N.E.2d 1012, nor is he or she required to prove that the employer had knowledge of the *"specific harm* that might befall the injured employee" (emphasis added), *Burns v. Presrite Corp.* (1994), 97 Ohio App.3d 377, 382–384, 646 N.E.2d 892, citing *Fyffe*, 59 Ohio St.3d at 117, 570 N.E.2d 1108. See, also, *Whitlock v. Ent. Metal Serv., Inc.* (Nov. 4, 1994), Lucas App. No. L–94–115, 1994 WL 602926. The employee must prove the employer's knowledge both of the danger and of the substantial certainty of harm to result from it. *Burns*, 97 Ohio App.3d at 384, 646 N.E.2d 892. The employee may establish the employer's knowledge by a review of the "totality of the evidence." *Ortiz v. Elyria Foundry Co.* (Oct. 21, 1992), Lorain App. No. 92CA005302, 1992 WL 308556.

## B. ANALYSIS

{¶ 12} In its motion, Baron argues that no genuine issue of material fact exists in this case regarding *Fyffe's* second ("substantial certainty") and third ("required") elements.[4] Therefore, Baron claims that it is entitled to judgment as a matter of law.

### 1. Substantial Certainty that Harm Will Result

{¶ 13} Baron argues that there is no genuine issue of material fact as to whether it had knowledge that injury or death to Moore was substantially certain. Baron observes that no prior similar injuries occurred on the clean and coat lines, and that members of the management regularly used the drip trays as walkways. Because of these facts and because Baron, it claims, had no way of knowing that Moore would mount the drip tray, Baron asserts that it could not have been substantially certain that Moore would be injured by the falling from a drip tray into the dip tank. The first issue for resolution is whether, given these factors, it

---

4. The parties do not dispute that the facts of this case establish *Fyffe's* first element ("knowledge"). However, to recover against Baron, the plaintiff ultimately must be able to prove the second and third elements as well. *Fyffe*, 59 Ohio St.3d at 115, 570 N.E.2d 1108, paragraph one of the syllabus.

was substantially certain that injury would result from the known danger posed by the drip tanks.

{¶ 14} What constitutes a "substantial certainty" varies from case to case. *Richie,* 89 Ohio App.3d at 644, 626 N.E.2d 1012. Often the matter is an issue of fact for the trier of fact. *Fultz v. Baja Boats, Inc.* (Feb. 18, 1994), Crawford App. No 3–93–10, 1994 WL 49934. A plaintiff need not prove that the "specific harm" was a substantial certainty. *Whitlock v. Ent. Metal Serv., Inc.,* supra, at 8. However, he or she must prove that the employer knew that, because of the exact danger presented, *Richie,* 89 Ohio App.3d at 644, 626 N.E.2d 1012, injury to employees who continued to encounter the known danger was substantially certain to result, *Fyffe,* 59 Ohio St.3d at paragraph two of the syllabus; *Kreais v. Chemi–Trol Chem. Co.* (1989), 52 Ohio App.3d 74, 77, 557 N.E.2d 155; *Felden v. Ashland Chem. Co.* (1993), 91 Ohio App.3d 48, 55, 631 N.E.2d 689. Generally, the absence of prior similar accidents "strongly suggests" that an injury resulting from a particular procedure was not substantially certain. *Foust v. Magnum Restaurants, Inc.* (1994), 97 Ohio App.3d 451, 455, 646 N.E.2d 1150. See, also, *Sanek,* 43 Ohio St.3d at 170, 539 N.E.2d 1114; *Wehri v. Countrymark, Inc.* (1992), 82 Ohio App.3d 535, 538–539, 612 N.E.2d 791; *Brunn v. Valley Tool & Die, Inc.* (Nov. 9, 1995), Cuyahoga App. No. 68811, 1995 WL 662115; *Pump v. Whirlpool Corp.* (May 13, 1988), Sandusky App. No. S–87–29, 1988 WL 47384. This fact alone is not outcome-determinative. See *Cook v. Cleveland Elec. Illum. Co.* (1995), 102 Ohio App.3d 417, 429–430, 657 N.E.2d 356. However, in the absence of prior similar accidents, when an upper level management employee is injured in an accident along with the plaintiff/employee and the management had been aware of the condition and thought that no remedy was necessary, it is not error for a trial court to grant summary judgment on the substantial certainty prong of the *Fyffe* analysis. *Wehri,* 82 Ohio App.3d at 538–539, 612 N.E.2d 791.

{¶ 15} As the plaintiff properly notes, the correct focus is whether the employer was substantially certain that *any* employee would be injured by the danger; the focus is broader than just the injured employee. It is with this standard in mind that the court reviews the substantial certainty issue.

{¶ 16} The plaintiff argues that a jury question exists on this issue because the totality of the evidence indicates that Baron was substantially certain *an* employee would be injured at some time by falling from a drip tray. She contends, and the record indicates, that West was in a rush to complete the task he was performing; Baron knew that employees used the drip trays as walkways as a normal part of their work; Baron had no safety procedures in place for rescues from the dip tanks; Baron had no railings installed on the drip trays as required by OSHA [5]; Baron provided no relevant emergency training to Moore

---

5. OSHA is the Occupational Safety and Health Act, Section 651 et seq., Title 29, U.S.Code.

or other employees; Baron's safety director was aware of the danger posed by using the drip trays and did nothing to alleviate that danger to employees; and Moore reflexively reacted to West's predicament.

{¶ 17} In support of her claim, the plaintiff cites the case of *Christian v. Universal Veneer Mill Corp.* (Dec. 26, 1995), Licking App. No. 95 CA 53, 1995 WL 776056. In that case, the employee sustained injuries when he fell into a vat of 170° Fahrenheit solution used in the manufacturing process. The employer had its employees walk on the lids of the vats without the use of safety equipment that the employer had on site; this practice violated known safety requirements and established OSHA regulations. The employer previously had been cited for violations of those OSHA regulations before the accident. The lids on which the employees walked in the normal course of their duties were frequently slippery from steam and wood chips. Under those facts, the *Christian* court concluded that issues of material fact precluded summary judgment on the issue of substantial certainty.

{¶ 18} However, this court finds that *Christian* is properly distinguishable. The employer in that case clearly had knowledge of a substantial certainty of harm arising from employees' walking on the vat lids as evidenced by prior relevant OSHA violations and established safety procedures specifically designed to prevent the precise type of injury that befell the employee. In this case, no previous OSHA citations regarding the drip tray conditions had been issued. The plaintiff argues that Baron had failed to comply with OSHA regulations regarding confined space procedures (for employees working inside empty dip tanks); Baron had previously been cited for these violations. Had Baron complied with those regulations, the plaintiff argues, it would have been better suited either to prevent Moore's and West's injuries or would have been able to effect immediate rescues. The court finds that the confined space violations do not provide notice of a drip tray accident. Additionally, even a relevant OSHA violation does not evidence the requisite intent unless there is an actual pre-accident citation. See *Hamilton v. Mitchellace, Inc.* (Jan. 6, 1990), Scioto App. No. 1783, 1990 WL 9941 (Harsha, J., concurring), citing *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114. See, also, *Ortiz v. Elyria Foundry Co.*, supra. The court also notes that OSHA violations generally are not a proper basis for civil liability. *Behanan v. Desco Distrib. Co.* (1994), 98 Ohio App.3d 23, 26, 647 N.E.2d 830. Additionally, an OSHA violation is insufficient to establish even negligence per se. *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 649 N.E.2d 1215, syllabus.

{¶ 19} The court also notes that Baron experienced no previous falls from the drip trays during the seven years Baron had been using the dip tanks. While this fact is not the sole determinative factor as to the substantial certainty of

harm, see *Cook*, 102 Ohio App.3d at 429, 657 N.E.2d 356,[6] this evidence militates against a finding of substantial certainty. See *Wehri*, 82 Ohio App.3d at 538–539, 612 N.E.2d 791.

{¶ 20} The plaintiff contends that *Wehri* is properly distinguishable from this case. In *Wehri*, two employees in a grain milling facility were injured by two successive fiery explosive blasts caused by disabled or missing parts in the operations. Id. at 538, 612 N.E.2d 791. The *Wehri*, the court concluded that a lack of prior accidents along with the fact that two upper level management employees were also injured in the explosions supported the trial court's conclusion that injury was not substantially certain to arise from the dangerous condition. Id. at 538–539, 612 N.E.2d 791. The court noted that management was aware of the conditions that caused the explosions and attempted no remedy. Id. In this case, there were no prior injuries at Baron, it was common practice within the company to traverse the drip trays, a senior manager (West) was injured by falling from one of the drip trays when he used it in the accepted way, and management was aware of the condition and thought it not worthy of attention or safety rule (see Helfer Depo., at 60, 120, and 133–134). The court in *Wehri* found that the conditions at that grain milling facility evidenced, at most, "a plethora of negligence." Id. at 538, 612 N.E.2d 791. Similarly, the evidence in this case is sufficient to permit reasonable minds to find that Baron should have known about the hazard posed by the drip trays. However, the conclusion that an employer "should have known" an injury would occur, while evidence of negligence, is insufficient to establish the employer's knowledge of the substantial certainty of harm. *Youngbird v. Whirlpool Corp.* (1994), 99 Ohio App.3d 740, 746, 651 N.E.2d 1314; *Brunn v. Valley Tool & Die, Inc.*, supra. See, also, *Fyffe*, 59 Ohio St.3d at 115, 570 N.E.2d 1108, paragraph two of the syllabus (reckless, "something short of substantial certainty[,] is not intent").

{¶ 21} Therefore, based on a review of the totality of the evidence, the court finds that the second prong of *Fyffe* has not been satisfied in this case. The court finds that reasonable minds could only conclude that Baron was not

---

6.  In *Cook*, the court concluded that despite no previous accidents, a genuine issue of material fact existed as to the substantial certainty prong. In that case, an employee was injured by an electrical explosion when a faulty power shutoff switch caused him to fail to fully disengage one power source before he engaged another. The court concluded that there was evidence that the electrical system that exploded, which was designed by a non-electrician, was temperamental. The evidence also showed that the power shutoff switch had malfunctioned on at least one other occasion; the plant manager was informed of that fact at the time. Id. at 425–428, 657 N.E.2d 356. *Cook* is, therefore, properly distinguishable from this case because there is no evidence that use of the drip trays had been a problem before Moore's and West's accidents.

substantially certain that an employee would be injured by walking on the drip trays.

### 2. Required Employee to Encounter a Known Danger that was Substantially Certain to Result in Harm

{¶ 22} Baron also argues that the plaintiff has not satisfied *Fyffe's* "required" element because Baron never required Moore to mount the drip tray, never required him to attempt to rescue West, and never required him to undertake the rescue in the manner in which he did. Baron asserts that Moore's rescue attempt was a laudable voluntary act but that the attempt was not a part of his normal duties. Thus, the issue is whether a voluntary rescue attempt by a coworker may, in and of itself, satisfy *Fyffe's* third element.

{¶ 23} As the *Fyffe* court stated:

{¶ 24} "[I]n order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: * * * (3) that the employer * * * *did act to require the employee to continue to perform the dangerous task.*" (Emphasis added.) Id. at paragraph one of the syllabus.

{¶ 25} Generally, an injury must arise in the normal course of the employee's duties in order to satisfy *Fyffe's* third element. *Howard v. Columbus Prod. Co.* (1992), 82 Ohio App.3d 129, 135, 611 N.E.2d 480. Ordinarily, a voluntary attempt by one employee to rescue a coworker does not evidence a "required" act within the normal course of the employee's duties and, therefore, is insufficient to satisfy the third element of *Fyffe*. *Hannah v. Dayton Power & Light Co., Inc.* (Mar. 7, 1997), Montgomery App. No. 16209, 1997 WL 104621, appeal pending (1997), 79 Ohio St.3d 1449, 680 N.E.2d 1021.

{¶ 26} The plaintiff argues that (1) West, on behalf of Baron, did order (and therefore did require) Moore to rescue him; (2) an express order is not required to satisfy the third element of the *Fyffe* test; (3) the totality of the evidence indicates that Baron required Moore to perform the rescue; and (4) the so-called "rescue doctrine" serves to satisfy the third element of the *Fyffe* test.

{¶ 27} First, the plaintiff asserts that West's plea, "Help get me out," was a mandate by Baron for Moore to attempt a rescue. However, the court finds that these words do not rise to the level of a "requirement." The court finds that West's call was a request for humanitarian action rather than an order to engage in a work-related duty. Even if the phrase can be construed as an order, West did not mandate the manner in which Moore was to effect the rescue. An employer cannot be expected to anticipate an employee's actions leading to his or her injury where the employee has alternate means available to

avoid exposure to injury. *Adams v. Casey Sales & Serv.* (Dec. 6, 1996), Wood App. No. WD–96–030, 1996 WL 714763, citing *Brunn v. Valley Tool & Die, Inc.,* supra; *Bond v. Howard Corp.* (Oct. 20, 1993), Lorain App. No. 93CA005576, 1993 WL 413652, affirmed (1995), 72 Ohio St.3d 332, 650 N.E.2d 416. And, when an employer has no reason to anticipate an employee's specific act that causes the employee injury, the employer has not "required" the employee to encounter the danger. *Brunn v. Valley Tool & Die, Inc.,* supra. In *Brunn,* the employee was injured when she reached her arm into the die area of a hydraulic press to remove a machined piece that had fallen. Her employer never instructed her to reach into the point of operation to retrieve fallen material. In that situation, the *Brunn* court concluded that the employee failed to satisfy *Fyffe's* "required" prong. In this case, Moore had other means to effect a rescue; he could have signaled the overhead crane operator to lower the crane spreader to West (this is the way Moore was rescued from the tank). Additionally, Baron had no way of anticipating that Moore would leap onto the drip tray because Moore had never before walked on a drip tray and vowed that he never would do so because of the perceived danger.

{¶ 28}    Second, citing *Howard,* 82 Ohio App.3d 129, 611 N.E.2d 480, *Sibert v. Columbus* (1990), 68 Ohio App.3d 317, 588 N.E.2d 252, and *Kreais,* 52 Ohio App.3d 74, 557 N.E.2d 155, the plaintiff argues that *Fyffe's* third element may be satisfied without an express order from the employer to encounter a danger. These cited cases stand for the virtually identical propositions that an employer need not affirmatively require an employee to encounter a known danger so long as the employee is "subjected to a dangerous condition while performing his or her normal duties" (*Howard*), or the employer "continue[s] to subject" the employee to the hazard (*Sibert*), or the employee "felt compelled to" encounter the danger (*Kreais*). However, the court finds that these cases are properly distinguishable because they all involve risks that the employees faced in the normal course of their duties. *Howard,* 82 Ohio App.3d at 135, 611 N.E.2d 480; *Sibert,* 68 Ohio App.3d at 322, 588 N.E.2d 252; *Kreais,* 52 Ohio App.3d at 78, 557 N.E.2d 155. See, also, *Hannah,* supra (distinguishing *Howard* from the rescue at issue in *Hannah* because the rescue in the latter case was not in the normal course of the employee's employment duties).[7]

---

7.  In her surreply brief, the plaintiff argues that the case of *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235, 527 N.E.2d 871, indicates that the Supreme Court of Ohio does not strictly adhere to the "required" prong. However, the court finds that *Hunter* is properly distinguishable because it addressed the statute of limitations applicable to workplace intentional tort claims. Id. at syllabus. The court notes that *Fyffe* was decided after *Hunter.* The court, therefore, finds that *Hunter* does not diminish the vitality of the "required" element reaffirmed in paragraph one of the syllabus of *Fyffe.*

{¶ 29}   Third, the plaintiff asserts that the totality of the conditions present at Baron at the time of Moore's and West's accidents (those recited supra at 8–9) satisfy the "required" element of the *Fyffe* test.   However, based on the analysis already conducted by the court on the "substantial certainty" and the "required" elements, the court finds that reasonable minds could only conclude that the totality of the conditions do not rise to the level of "requir[ing] the employee to *continue* to perform the dangerous task" as called for in paragraph one of *Fyffe's* syllabus.   (Emphasis added.)

{¶ 30}   Fourth, the plaintiff argues that the "rescue doctrine" applies to Moore's rescue attempt in this case and this doctrine substitutes for and thereby satisfies the "required" element in *Fyffe*.

{¶ 31}   "The rescue doctrine is part of the common law of Ohio.   That is, one injured in an attempt to rescue a person in danger may recover from the party *negligently* causing the danger to the same extent as the person being rescued.   Recovery is precluded if the rescue is attempted in a rash or reckless manner.   *Pennsylvania Co. v. Langendorf* (1891), 48 Ohio St. 316 [28 N.E. 172]; *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Lynch* (1903), 69 Ohio St. 123 [68 N.E. 703]."   (Emphasis added.)   *Reese v. Minor* (1981), 2 Ohio App.3d 440, 440, 2 OBR 534, 442 N.E.2d 782.

{¶ 32}   "[T]he rescue doctrine allows a person attempting the rescue to recover for *negligence* under common-law principles."   (Emphasis added.)   *Brown v. Cincinnati* (1989), 59 Ohio App.3d 49, 50, 571 N.E.2d 143.   Under that doctrine, a tortfeasor who negligently injures a rescuer is liable in negligence even if the tortfeasor did not create the situation that gave rise to the attempted rescue.   Id.   Traditionally in Ohio, the rescue doctrine vitiates a negligent tortfeasor's defense of contributory negligence against a rescuer's claim and also serves to establish the foreseeability of injuries to the rescuer.   *Marks v. Wagner* (1977), 52 Ohio App.2d 320, 323–324, 6 O.O.3d 360, 370 N.E.2d 480.

{¶ 33}   The plaintiff invites the court to adopt the rescue doctrine to satisfy the *Fyffe* "required" element.   The plaintiff asserts that the rescue doctrine establishes proximate cause; she contends that the "required" element serves merely to establish proximate cause in employer intentional tort cases.   However, the court finds that the intent behind the common-law employer intentional tort cause of action would not be furthered by substituting the "rescue doctrine" for *Fyffe's* "required" element.

{¶ 34}   In *Van Fossen*, 36 Ohio St.3d at 109–118, 522 N.E.2d 489, the Supreme Court of Ohio provided a detailed description of the evolution of the workplace intentional tort.   At common law, employees injured on the job were left to bring negligence actions against their employers; employers often successfully asserted

the defenses of contributory negligence and assumption of the risk to avoid liability. Id. at 109, 522 N.E.2d 489. In the early 1900s, the General Assembly found this state of affairs to be unacceptable and legislated the earliest version of workers' compensation laws in Ohio; in exchange for an expectation of recovery at common law, Ohio's workers were assured a statutory remedy albeit less than they might receive against a common-law non-employer tortfeasor. Id. at 110, 522 N.E.2d 489. Ohio courts subsequently acknowledged that intentional torts by employers fell outside the workers' compensation framework and crafted an intentional tort exception to the statutory system. Id. at 111, 522 N.E.2d 489. During the 1980s, the Supreme Court of Ohio recognized that the dividing line between "intentional" conduct, for which an employee could bring a common-law action, and "negligent or reckless" conduct, which fell within the exclusive domain of the workers' compensation system, had become blurred. Id. at 116, 522 N.E.2d 489. Thus, convinced of the need to limit common-law actions by employees against employers to situations in which injury was a "virtual certainty," the *Jones* and, subsequently, the *Van Fossen* courts determined to focus their attentions "toward *significantly limiting* the areas within which 'intent' on the part of the [employer] may be circumstantially *inferred*." (First emphasis added; second emphasis sic.) *Van Fossen,* 36 Ohio St.3d at 117, 522 N.E.2d 489.

{¶ 35} Keeping in mind the Ohio Supreme Court's desire to "significantly [limit] the areas within which 'intent'" may be inferred, this court believes that the *Fyffe* court's statement regarding the "required" element of the standard ("did act to require the employee to continue to perform the dangerous task") means that the element is satisfied only when the employer actually "requires" the employee to continue to encounter a known danger found in the normal course of the employee's duties. See *Fyffe,* 59 Ohio St.3d at 115, 570 N.E.2d 1108, paragraph one of the syllabus. This "required" element is an additional element that is not a part of a common-law negligence action.[8] Therefore, the court finds that applying the rescue doctrine here would be contrary to the restrictive words and intent of the *Van Fossen* court. Accordingly, this court declines the plaintiff's invitation to expand the contours of the common-law workplace intentional tort in Ohio.

### 3. Conclusion

{¶ 36} Based on the foregoing, the court finds Baron's motion for summary judgment well taken. No genuine issue of material fact exists in this case that

---

8. "To establish actionable negligence, one must show in addition to the existence of a *duty,* a *breach of that duty* and *injury resulting proximately therefrom.*" (Emphasis added.) *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265.

would preclude summary judgment in favor of Baron. Accordingly, the court shall grant Baron's motion.

## JUDGMENT ENTRY

{¶ 37} It is ORDERED that the motion for summary judgment filed by defendant Baron Drawn Steel Corporation is granted. It is further ORDERED that this case is dismissed with prejudice as against that defendant.

Judgment accordingly.