DECISION AND JUDGMENT ENTRY
Scott and Karen Slack appeal the summary judgment entered in favor of Jerry Henry d/b/a U.S. Roofing by the Scioto County Court of Common Pleas. They assign the following error:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.
U.S. Roofing was hired by the State of Ohio to install a new roof at Southern Ohio Correctional Facility in Lucasville. U.S. Roofing subcontracted with Rainbow Construction to tear off the prison's old concrete roof. Scott Slack was an employee of Rainbow Construction. After Rainbow Construction finished tearing off the old roof, it "loaned" some of its employees, including Mr. Slack, to U.S. Roofing.
The agreement between Rainbow Construction and U.S. Roofing was informal and not reduced to writing. Rainbow Construction kept the "loaned" employees on its payroll and U.S. Roofing reimbursed Rainbow Construction for the employees' wages and overhead costs, including workers' compensation premiums. Despite receiving workers' compensation premiums from U.S. Roofing, Rainbow Construction did not pay the premiums into the state insurance fund. Therefore, Mr. Slack did not have workers' compensation coverage while employed by U.S. Roofing.
In October 1995, Mr. Slack was mopping hot tar onto a flat roof surface. Based on the instructions of a foreman employed by U.S. Roofing, Mr. Slack began working at the edge of the roof. According to Mr. Slack's deposition testimony, he was walking backwards while pulling a bucket full of hot tar to the edge of the roof. He stepped into some tar and then, while attempting to pull his foot loose, stepped onto what he believed to be the corner of the roof. In reality, Mr. Slack stepped onto foam and paper roofing materials that were overhanging the roof's edge.
Mr. Slack broke through the foam and fell, landing in a dumpster filled with scrap materials. He then bounced out of the dumpster and landed several feet away. While falling, Mr. Slack pulled the bucket of hot tar onto himself, causing burns over a significant portion of his body. After his fall, Mr. Slack was lifeflighted to Ohio State University Hospital in Columbus. He remained in the burn unit for ninety days and endured multiple surgeries. Mr. Slack continues to suffer from his injuries.
Mr. Slack filed a complaint for negligence against Rainbow Construction and an unknown employer. His wife sued for loss of consortium. They later dismissed Rainbow Construction and amended the complaint to name U.S. Roofing as the unknown employer. They amended the complaint again to include an intentional tort claim.
U.S. Roofing moved for summary judgment on two theories. First, it argued that because it had paid workers' compensation premiums to Rainbow Construction for coverage of Scott Slack, it was immune from suit for negligence under the workers' compensation laws. Secondly, U.S. Roofing argued that there was insufficient evidence to prove an intentional tort. The trial court granted summary judgment in U.S. Roofing's favor without delineating its grounds. Therefore, we conclude that the trial court found no genuine issue of material fact regarding the negligence claim or the intentional tort claim. Appellants filed a timely appeal from this entry.
In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgement is made, that party being entitled to have the evidence construed most strongly in its favor. Bostic v. Connor
(1988), 37 Ohio St.3d 144, 146; cf., also, State ex rel. Coulverson v.Ohio Adult Parole Auth. (1991), 62 Ohio St.3d 12, 14; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 145, citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 295.
First, we turn to appellee's contention that it is immune from appellants' negligence claim under the workers' compensation statutes. R.C. 4123.74 provides that
 Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, * * * whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.
R.C. 4123.01(B)(2) defines a non-governmental employer as any "person, firm, and private corporation * * *, that (a) has in service one or more employees regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (b) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by this chapter." One who exercises day-to-day control over an employee will be considered the employer for purposes of workers' compensation. Danielsv. MacGregor Co. (1965), 2 Ohio St.2d 89. Both parties agree that U.S. Roofing was Mr. Slack's employer for purposes of R.C. 4123.74. The parties disagree, however, on whether U.S. Roofing complied with R.C.4123.35 so that it should not be held liable for Mr. Slack's injuries under R.C. 4123.74.
R.C. 4123.35 requires that all employers, as defined by R.C.4123.01(B)(2), pay workers' compensation premiums into the state insurance fund. Appellee maintains that indirect payment of these premiums is sufficient to provide immunity to an employer under R.C.4123.74. Therefore, because U.S. Roofing made payments to Rainbow Construction for Mr. Slack's workers' compensation premiums, it is not liable for injuries arising from its negligence. We disagree.
Appellee relies on Foran v. Fisher Foods, Inc. (1985), 17 Ohio St.3d 193, for the proposition that indirect payment of workers' compensation premiums is sufficient to establish immunity. This is an accurate statement of the law but not determinative here. In Foran, the employer made premium payments to another company which in turn actually paid the premiums into the state insurance fund. Here, no workers' compensation premiums were paid into the fund for Mr. Slack's coverage; therefore, it is impossible for appellee to have made an indirect payment of these premiums. Consequently, appellee was not in compliance with R.C. 4123.35, despite the payments made to Rainbow Construction, and is not entitled to immunity under R.C. 4123.74.
Appellee further argues that because Mr. Slack received workers' compensation benefits under R.C. 4123.75, public policy supports the grant of immunity to appellee. R.C. 4123.75 allows an employee of a non-complying employer to recover workers' compensation benefits in the same manner as he would if his employer had complied with R.C. 4123.35. The benefits are then directly billed to the non-complying employer. Here, Rainbow Construction was directly billed for the benefits paid to Mr. Slack. Appellee argues that it would be unfair not to grant it immunity since Mr. Slack has already been compensated for his injuries.
Appellee's argument ignores the plain language of R.C. 4123.75 which specifically states that recovery of benefits under that section does not bar claims of negligence against a non-complying employer as stated in R.C. 4123.77. To prevent employees from recovering twice, an employee is required to reimburse the state insurance fund if a recovery is made under a lawsuit against the non-complying employer. Consequently, we conclude that Mr. Slack's recovery of benefits under R.C. 4123.75 has no bearing on whether or not appellee has immunity under this statutory scheme. While Rainbow Construction was ordered to make the payments as the non-complying employer under R.C. 4123.75, this does not determine whether appellee was entitled to immunity for any negligent acts on its part.
We acknowledge that this holding may seem unfair in that appellee made payments to Rainbow Construction in reliance on the fact that Rainbow Construction was paying the requisite workers' compensation premiums. However, in order to protect itself, an employer must ensure that the payments made to an employment agency or other provider of workers are actually being paid into the state insurance fund. It is not enough to merely assume that the required payments are being made. While indirect premium payments are sufficient to render an employer immune for its negligence, simply making payments to a third party that are earmarked for purposes of workers' compensation premiums is not sufficient under R.C. 4123.74 and R.C. 4123.35 if those payments are not ultimately made to the state insurance fund. Therefore, the trial court erred in granting summary judgment in favor of appellee on appellants' negligence claim.
Appellants also assert that the trial court erred in granting summary judgment in favor of appellee on their intentional tort claim. The parties agree that the tripartite test for an intentional tort committed by an employer as outlined by the Ohio Supreme Court in Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, is applicable here. In Fyffe, the Court held that in order to establish "intent" a plaintiff must establish:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Id. at paragraph one of the syllabus.
A plaintiff must establish proof beyond that required to prove negligence and recklessness. Where an employer acts despite his knowledge of some risk, his conduct may be negligent. As the probability of particular consequences increases, the employer's conduct may be characterized as reckless. As the probability of those consequences further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, the employer is treated by the law as if he had in fact desired to produce the ultimate result. However, mere knowledge and appreciation of a risk is not sufficient to show intent.Id. at paragraph two of the syllabus.
In response to a motion for summary judgment by the employer, the employee must set forth specific facts which show that there is a genuine issue whether the employer committed an intentional tort against its employee. McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236,244, citing Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph seven of the syllabus. We believe appellants have met this burden and genuine issues of material fact exist.
Jerry Henry testified that the two primary dangers of roofing were getting burned by the tar and falling off a roof. Further, Mr. Henry testified that a roofer should be supervised until he had four years experience. Mr. Henry stated that he was advised that Mr. Slack had prior roofing experience; however, he did not testify that Mr. Slack's experience was sufficient for him to work unsupervised. These facts are evidence that Mr. Henry knew of the dangerous condition present.
The occurrence and proof of previous accidents assists in showing knowledge of a substantial certainty of harm on the part of the employer, though it is not the sole determinative factor. Cook v.Cleveland Elec. Illuminating Co. (1995), 102 Ohio App.3d 417, 429. Here, Kenneth Howard testified that another employee fell from the roof prior to Mr. Slack. Mr. Henry testified that that incident was dissimilar because the other employee was "fooling around" when he fell off the roof. We do not believe this fact makes the incident so dissimilar that it is irrelevant for summary judgment purposes to show that harm was a substantial certainty. Furthermore, the focus of the Fyffe substantial certainty test is not only on how often the accident will occur, but also the employer's knowledge of the certainty of death or injury to an employee when an accident does occur. Id., citing Kreais v. Chemi-TrolChem. Co. (1989), 52 Ohio App.3d 74, 76. Clearly, Mr. Henry was aware that a fall from the prison roof would likely result in serious injury and possibly death.
We also must consider the lack of safety equipment which may have prevented or lessened Mr. Slack's injuries. Mr. Slack testified that there were no guard rails on the roof's edge, safety rails, warning ropes or safety nets. He also testified that U.S. Roofing did not provide any harnesses for the employees working on the roof. Mr. Henry, on the other hand, testified that safety belts and harnesses were available to the employees but safety rails and harnesses would have made the site more dangerous because of the use of mops and hot tar. He also testified that the presence of a safety officer on the roof was an alternative to safety rails.
Ohio Adm. Code 4121:1-3-03(J)(1) requires that an employer provide lifelines, safety belts and lanyards to employees exposed to hazards of falling when the operation being performed is more than fifteen feet above ground. This provision places the responsibility of utilizing the equipment on the employee. Subsection (L)(1) requires that safety nets be provided when the workplace is more than twenty-five feet above ground and the use of other safety devices is impractical. Failure to comply with safety regulations is relevant to show that an employer required an employee to perform a dangerous task, knowing of the substantial certainty of injury. See Patton v. JH Reinforcing and StructuralErectors, Inc. (Dec. 9, 1994), Scioto App. No. 93CA2194, unreported.
Whether or not appellee complied with this provision of the code is unclear based on the deposition testimony. Mr. Henry testified that nets were not necessary because the roof was only seventeen feet high. However, Mr. Slack testified that the roof was twenty to thirty feet high and Kenneth Howard testified that it was twenty-six to thirty feet high. The parties also disagree on whether the use of safety devices was impractical. Perhaps most importantly, there is a question as to whether the roofers were exposed to hazards of falling so that Ohio Adm. Code4121:1-3-03(J)(1) is applicable.
We also note that Mr. Slack's version of how he fell is relevant to our analysis. Mr. Slack testified that he fell because he stepped on foam that was overhanging the edge of the roof. He believed the foam was on top of the roof, not overhanging it. Kenneth Howard testified that this overhanging foam makes it hard to judge how close one is to the edge of the roof. The loose foam would hang two to three feet over the edge of the roof and would remain there until the metal trim was installed. Based on this evidence, it is clear that the dangerous condition Mr. Slack was exposed to was not just because of the height of the roof. Rather, the overhanging foam in combination with the alleged lack of sufficient markers created a dangerous situation where employees were at risk of falling.
We believe that appellants have satisfied their burden of setting forth specific facts which show that there is a genuine issue as to whether appellee committed an intentional tort.
Having found that summary judgment was improperly granted, we reverse and remand this case for further action consistent with this opinion.
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellants recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J., Abele, J.: Concur in Judgment Opinion
 _______________________ William H. Harsha, Judge