**Edward J. PODGURSKI,**
Plaintiff–Appellant,

v.

**GENERAL MOTORS CORPORATION,**
et al., Defendants–Appellees.

No. 01–3842.

United States Court of Appeals,
Sixth Circuit.

May 15, 2003.

Before BOGGS, SILER, and GIBBONS, Circuit Judges.

PER CURIAM.

Edward J. Podgurski appeals the district court's order granting summary judgment to defendants, Delphi Auto Systems and General Motors Corporation (hereinafter, collectively, "Delphi"), in his action alleging an intentional tort arising out of an incident in which Podgurski sustained a serious injury on the job.

Podgurski was employed as a journeyman millwright at Delphi Auto Systems, a division of General Motors Corporation, when he suffered a severe laceration of his left wrist on July 6, 1998. He was assigned by his supervisor, Gary Laws, to remove a filter from a coalescing unit so that it could be steam cleaned. Podgurski

used a tow motor and boom with chains to remove and replace the filter from the unit. He was returning the filter to the unit after it had been cleaned when it caught on a vertical steam pipe located in front of the coalescing unit. He began pushing the filter in order to free it. Another employee, unbeknownst to Podgurski, attempted to help him by pulling the chains from behind. This caused the filter to swing and fall. Its unbuffed edges sliced Podgurski's wrist as it fell. The filter is estimated to weigh anywhere between eighty and 365 pounds.

The pipe was initially supposed to be placed at the rear of the unit; however it was placed in front of the unit when it was installed, apparently contrary to the engineering drawings. The front of the unit presented the only access to the filter. At the time of the accident, the pipe had been at that position for approximately twelve years. David Munson, the plant engineer, had previously noticed that the pipe was in the wrong location, but did not have it moved. Jim Roberts, a supervisor in Podgurski's department, testified that the placement of the steam pipe made the job of removing and replacing the coalescing filter more difficult. He also testified that at some time prior to Podgurski's injury, another worker, Shawndor Gajarsky, injured his back while returning the filter to the unit after cleaning. Roberts testified that he requested that upper management relocate the pipe, as it presented an obstacle to the coalescing filter. The pipe, however, was not moved.

Subsequent to Podgurski's injury, the plant safety director and others prepared a "Safety Incident Report," in which the factors contributing to Podgurski's injury were identified: (1) it was a non-routine task, performed infrequently, by one who had not previously performed this task; (2) there were pipes overhead and a water line in front of the unit that made the job more difficult; (3) the employee used his hands to free the filter from the water line instead of an expendable tool; and (4) the bottom edge of the filter had a sharp edge. Podgurski testified that he could not have used an expendable tool to do the job. Roberts testified that he agreed with this assessment. As a result of the investigation, the overhead pipes and the steam pipe were relocated to where the original engineering drawings indicated they should be placed. There is no evidence that anyone was aware that the frame of the filter was dangerously sharp.

Podgurski filed an action for intentional tort in the Court of Common Pleas for Cuyahoga County, Ohio. Delphi removed the action to federal court. After both Podgurski and Delphi moved for summary judgment, the district court granted summary judgment to Delphi.

This court reviews de novo the district court's grant of summary judgment. *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In response to a motion for summary judgment, it is incumbent upon the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to show there is a genuine issue of material fact, the non-moving party must produce more than a mere scintilla of evidence to support its position. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a summary judgment motion, the court must view the evidence and draw

all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court may not weigh the evidence or determine the truth of the matter, but is limited to determining whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

Here, the district court's jurisdiction was premised upon diversity of citizenship. As such, this court must apply the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.,* 266 F.3d 560, 566 (6th Cir.2001).

■ The Ohio Supreme Court clarified the elements of an intentional tort in *Fyffe v. Jeno's Inc.,* 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991):

> ... [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Id.* at 1109.

In order to prove a claim of intentional tort, a plaintiff must show actual knowledge on the part of the employer of "the exact dangers which ultimately caused injury." *Sanek v. Duracote Corp.,* 43 Ohio St.3d 169, 539 N.E.2d 1114, 1117 (1989).

Podgurski presented evidence that management was aware of a prior injury involving the manipulation of the filter, and the position of the steam pipe. However, the prior incident involved an employee injuring his back, while Podgurski's injury was a laceration caused by the filter's unbuffed edges. Drawing all inferences in favor of Podgurski, there is no evidence to show actual knowledge on the part of Delphi of the exact dangers that ultimately caused his injury.

■ Even if the danger is assumed to be the less precise danger presented by the location of the pipe, rather than the exact danger of being cut by the filter while maneuvering around the pipe, and even if the one prior minor injury is sufficient to show that Delphi was on notice that the pipe was a dangerous condition, Podgurski's claim also fails to meet the second *Fyffe* factor.

To succeed on his claim, Podgurski must show that Delphi knew that if he was subjected to the dangerous condition of moving the filter around the steam pipe, there was a substantial certainty that he would be harmed. This is a very difficult standard to meet. The focus is on "not only how often the accident will occur but also the employer's knowledge of the certainty of death or injury to an employee when an accident does occur." *Cook v. Cleveland Elec. Illum. Co.,* 102 Ohio App.3d 417, 657 N.E.2d 356, 364 (1995) (citing *Kreais v. Chemi–Trol Chem. Co.,* 52 Ohio App.3d 74, 557 N.E.2d 155, 157 (1989)). In order to show liability, the plaintiff must demonstrate a "level of risk-exposure ... so egregious as to constitute an intentional wrong." *Sanek,* 539 N.E.2d at 1117.

The facts of this case do not demonstrate this level of risk exposure. There is no evidence that Delphi had any reason to believe that its employees were in grave

danger of serious injury or death because of the location of the steam pipe. Delphi perhaps was on notice that the location of the steam pipe was inconvenient, had caused an employee to slip and hurt his back, and perhaps it might be perceived as negligent or even reckless. Yet, "mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Fyffe*, 570 N.E.2d at 1110. Even recklessness on the part of an employer does not meet the intent requirement for an intentional tort.

For all of the reasons above, we affirm the judgment of the district court.