RICHIE, Appellant,

v.

ROGERS CARTAGE COMPANY, Appellee.

[Cite as *Richie v. Rogers Cartage Co.* (1993), 89 Ohio App.3d 638.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–251.

Decided July 30, 1993.

*Mark Vitou, Alan Mikesell* and *Ronald McCourt,* for appellant.

*M. Donald Carmin,* for appellee.

*Per Curiam.*

This case is before us on appeal from a judgment of the Lucas County Court of Common Pleas, wherein the court granted summary judgment in favor of defendant-appellee, Rogers Cartage Company ("Rogers"), and against plaintiff-appellant, Michael R. Richie. Because we conclude that Richie raised genuine issues of material fact on his employer intentional tort claim, we reverse the judgment of the court below.

The relevant facts of this case are as follows. Rogers is a hauler of liquid and dry chemicals, including paint products and acids. As part of its operation, Rogers has established cleaning/maintenance terminals in the midwest and southern United States, where its trucks go between hauling loads. In particu-

lar, the tanks of the trucks must be thoroughly cleaned after they are emptied so that a different product can be put into the tank without an adverse reaction. Michael Richie began working at Rogers' Toledo terminal in May 1987 as a tank cleaner. During the first several weeks of his employment, Richie was trained by the lead tank cleaner, Bob Benore. As part of his training, Richie was taught how to back the trucks into the cleaning bay and how to clean various substances from the insides of the tanks. There were, however, no written procedures regarding the proper methods of cleaning various substances from the tank interiors, nor were there any safety instructions with regard to the various chemical cleaners used.

On January 15, 1989, Richie arrived at the Toledo terminal at approximately 3:00 p.m. to begin working the evening shift. As it was a Sunday, only he and Paul TenEyck, a mechanic, were on duty. TenEyck helped Richie back a truck into the cleaning bay and then went into the mechanic's bay to attend to his own work. After the truck was backed into the bay, the overhead door was closed, as were all other doors to the bay. The truck to be cleaned that day had held primer paint, the removal of which required a solvent. The solvent being used by Rogers at this time was known as "Mask Wash." To apply the solvent, Richie was required to enter the tank by means of a metal ladder hung through a dome hole on the top of the tank. Before entering the tank, Richie put on a full face mask attached to an air hose, rubber boots and gloves. Although Rogers also provided hard hats and raincoats, Richie chose not to wear either. Richie then attached a standard mechanic's lead light to the ladder, entered the tank, and applied approximately thirty gallons of Mask Wash to the interior of the tank, using a spray wand which was attached to a holding tank outside the truck. At approximately 6:00 p.m., Richie finished spraying down the interior of the tank. He then exited the tank through the dome hole and was taking off his air mask when an explosion occurred. The explosion threw Richie from the top of the tank to the floor and caused a fire. Richie was subsequently found by Paul TenEyck, who removed him from the building. As a result of the explosion, Richie was severely burned over ninety percent of his body.

Subsequently, Rogers' safety department, the fire department and the Occupational Safety and Health Administration ("OSHA") conducted investigations, but none could determine the actual cause of the explosion. OSHA, however, cited Rogers for multiple violations of the Occupational Safety and Health Act of 1970. In particular, OSHA determined:

"3. 29 CFR 1910.106(e)(6)(i): Adequate precautions against the ignition of flammable vapors were not taken:

"Throughout the cleaning bay where a class 1–b solvent, Mask Wash was used for cleaning semi-truck trailers, ignition sources were present such as common

electrical wiring not designed for Class I locations, a mechanics trouble light, the gas fired burner for the caustic heating tank, static charge from the underground spray hose, and the iron ladder being used inside the dome hole of the tank trailers."

In addition, it was determined that the cleaning bay was improperly ventilated, and the tanks themselves were improperly ventilated both prior to and during the cleaning process.

On January 12, 1990, Richie filed a complaint against Rogers, setting forth a claim for employer intentional tort. Rogers answered and subsequently filed a motion for summary judgment, arguing that Richie did not establish the requirements for an employer intentional tort claim. Richie filed a memorandum in opposition and Rogers filed a reply brief. In all, the court was presented with the deposition testimony of seven witnesses, as well as other evidence pursuant to Civ.R. 56. Upon review of the evidence, the trial court determined that Richie had not provided evidence that Rogers acted to require him to perform a dangerous task known to pose a substantially certain risk of injury to Richie. The court, therefore, granted Rogers' motion for summary judgment. From that judgment, Richie now appeals, raising the following assignments of error:

"1. The trial court erred in its decision to grant summary judgment for defendant/appellee Rogers Cartage Co. and dismiss the employer intentional tort claim of plaintiff/appellant Michael R. Richie when the evidence, construed most strongly in favor of the non-moving party, established that the defendant/appellee employer acted to require the plaintiff/appellee employee to perform a dangerous task known to pose a substantially certain risk of injury.

"2. The trial court erred in its decision to grant summary judgment for defendant/appellee Rogers Cartage Co. and dismiss the employer intentional tort claim of plaintiff/appellant Michael R. Richie when the evidence construed most strongly in favor of the non-moving party, established that the defendant/appellee employer had deliberately misrepresented a hazardous substance and, as a direct result, the plaintiff/appellant employee was injured."

■ Upon a summary judgment motion, the movant must demonstrate:

" * * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. See, also, Civ.R. 56(C).

In addition, in employer intentional tort cases, the burden of demonstrating that the employer committed an "intentional tort" as defined by *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, and its progeny, never leaves the employee. *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1116. The Supreme Court of Ohio has therefore determined that:

" * * * in an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee." *Van Fossen v. Babcock & Wilcox Co., supra,* 36 Ohio St.3d at 117, 522 N.E.2d at 505.

Accordingly, where the movant has made the tripartite demonstration set forth in *Harless,* and the nonmoving party has failed to rebut with evidence that there is a genuine issue of material fact, that reasonable minds could differ as to the conclusion to be drawn, and that the moving party is not entitled to judgment as a matter of law, a trial court's granting of summary judgment will not be disturbed on appeal.

Because both assignments of error challenge the trial court's ruling on appellee's motion for summary judgment, we will address them together. Specifically, appellant contends that genuine issues of material fact remain as to whether Rogers required Richie to perform a dangerous task known to Rogers to pose a substantially certain risk of injury and whether Rogers deliberately misrepresented a hazardous substance thereby causing Richie's injury.

Generally, all actions for injuries sustained in the course of employment must be brought under Ohio's Workers' Compensation Act. An employee, however, may recover at common law for injuries sustained as a result of the intentional conduct of his employer. See *Van Fossen v. Babcock & Wilcox Co., supra; Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 522 N.E.2d 477; and *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. In order to establish intent for the purpose of proving an employer intentional tort, the employee must demonstrate:

" * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to

continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

The difficult issue in any employer intentional tort case is the degree of risk the employer can take before its conduct is legally considered to be, or can legally be inferred to be, an intentional act to injure. The employee need not prove that the employer had an actual subjective intent to cause the injury sustained or that the employer knew that the exact injury sustained would occur. *Id.* at 117, 570 N.E.2d at 1111. However, the mere knowledge and appreciation of a risk is not enough. *Id.*, paragraph two of the syllabus. The employee must prove that the employer knew that because of the exact danger posed, the employee would be harmed in some manner similar to the injury sustained or that the employer knew that because of the exact danger posed, it was highly probable (substantially certain) that the employee would be harmed in some manner similar to the injury sustained. *Id.*

What constitutes a "substantially certain" result will vary from case to case based on the facts involved. As the Supreme Court noted in *Van Fossen v. Babcock & Wilcox Co., supra,* 36 Ohio St.3d at 117, 522 N.E.2d at 504:

"There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an 'intentional tort' * * *."

Therefore, the intentional tort cause of action is limited to egregious cases. *Sanek v. Duracote Corp., supra,* 43 Ohio St.3d at 172, 539 N.E.2d at 1117.

Appellant contends that he presented evidence raising a genuine issue of material fact as to whether Rogers knew of a dangerous process within its business operation which was substantially certain to injure appellant when he was directed to perform his job utilizing this dangerous process. At the time of Richie's accident, Rogers' Toledo terminal was in possession of a material safety data sheet ("MSDS") on Mask Wash. The MSDS identifies the solvent as "Lacquer Thinner, Mask Wash," a "Reclaimed Solvent, Processed Thinner" from the "Ketone–Acetate–Aromatic–Aliphatic" chemical family. *SECTION IV–FIRE AND EXPLOSION HAZARD DATA* indicates that Mask Wash "Forms combustibles and/or explosive mixtures with air" and has a flash point of twenty-five degrees Fahrenheit. *SECTION VII–SPILL OR LEAK PROCEDURES* states that in case the material is released or spilled, one should "Remove all ignition sources. Ventilate enclosed spaces. Avoid breathing vapor." *SECTION VIII–*

*SPECIAL PROTECTION INFORMATION,* indicates under the "Mechanical" category, "Explosion-proof equipment." Finally, under *SECTION IX–SPECIAL PRECAUTIONS,* the handling and storing category provides, "Keep away from heat, sparks and open flame. Keep container closed." Despite these express warnings, evidence revealed the following.

The cleaning bay was not properly ventilated. Although there was a fan in the exterior wall, witnesses testified that it had not worked for a number of years. In addition, Rogers did not require its employees to keep the bay doors open when using Mask Wash and did not instruct them on the importance of proper ventilation. A standard mechanic's lead light rather than an explosion-proof light was used to illuminate the interior of the tanks. Although the company had in the past provided explosion-proof lights, at the time of appellant's accident, the explosion-proof lights had been broken for at least six months and no attempt had been made to fix them or have them replaced. Multiple ignition sources were found to exist at the terminal. Additionally, despite having received the MSDS, no one at the Toledo terminal reviewed the sheet to determine the proper method of dealing with Mask Wash. Rogers' employees at a terminal in Hammond, Indiana, employed a far different method of using Mask Wash. At that terminal, trucks were cleaned outside to allow for proper ventilation and the terminal utilized special cleaning equipment that did not require the cleaner to enter the tank. Nevertheless, the Toledo terminal employees, including appellant, were directed to clean tanks with Mask Wash but were not given information about the product, were not educated on how to safely use the product, and were not provided with the proper environment in which to use the product.

Upon a review of this evidence, we conclude that *genuine issues of material fact* remain as to whether Rogers committed an employer intentional tort. In particular, the fact that Rogers had provided explosion-proof lights in the past and employed far different cleaning methods at another terminal when using Mask Wash indicates some knowledge on the part of Rogers as to the proper environment necessary for using Mask Wash. At the Toledo terminal, however, Rogers required appellant and other employees to use Mask Wash without providing them with the information, equipment or environment necessary to use the product safely. Accordingly, we conclude that evidence was before the trial court to support a finding that Rogers knew that if its employees were required to use a highly volatile solvent with the equipment and in the environment provided, then injury to those employees, *i.e.,* Richie, was substantially certain to occur.

Accordingly, the trial court erred in granting Rogers' motion for summary judgment, and both assignments of error are found well taken.

On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded for further proceedings not inconsistent with this decision. Costs to appellee.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., ABOOD and MELVIN L. RESNICK, JJ., concur.