OPINION
This is an appeal from the Portage County Court of Common Pleas. Appellant, Melanie Jarrell, administratrix of the estate of her son, Brian Foguth, appeals from the judgment of the trial court, which granted summary judgment in an intentional tort and wrongful death action in favor of appellees, Englefield, Inc., Englefield Oil Company, Inc., d.b.a. Duke and Duchess Shoppe, Fredrick William Englefield, III, Fredrick William Englefield, IV, and Benjamin B. Englefield.[1]
On November 28, 1994, at approximately 2:00 a.m., Foguth was working the third shift as a cashier in the Duke and Duchess gas station/convenience store owned and operated by appellees in Brimfield Township.[2] He was shot in the head during a robbery by an unknown perpetrator.[3] As a result of the gunshot wound, he died. Foguth was the only employee on duty at that time, and he had been employed by appellees for three to four months prior to the incident. The affidavit of appellant's attorney revealed that the November 28, 1994 incident was not an isolated occurrence. We note that no objection was interposed to this affidavit. Thus, the trial court could properly consider it for summary judgment purposes. Rodger v. McDonald's Restaurantsof Ohio, Inc. (1982), 8 Ohio App.3d 256, 257-258, fn 7.
Even though the gas station had been robbed once in 1989 or 1990 and once in 1991, no one was injured and no firearms were used. In addition, the incident reports for the three years prior to Foguth's death reveal that the majority of the crimes were gasoline thefts. The reports also showed that there was some shoplifting, employee theft, indecent exposure and fights. Further, one of the managers, in her deposition, stated that individuals who worked the third shift received twenty cents more per hour than those who worked the first or second shift because it was difficult to find good employees willing to work those hours.
The various depositions also revealed that prior to this robbery, appellees' employees were given training in handling themselves during a robbery. They were given a Robbery Procedure Manual and the store manager went over it with them. In addition, the store was equipped with a silent alarm and a closed circuit television camera, which were both operating on the night of the robbery.
On July 1, 1996, appellant filed a complaint against appellees based on a claim of employer intentional tort. After discovery, on July 22, 1998, appellees moved for summary judgment. Appellant filed a motion in opposition to appellees' motion. The trial court granted appellees' motion for summary judgment on September 11, 1998. Appellant timely filed the instant appeal and asserts the following as error:
 "The Trial Court erred in granting Appellees' Motion for Summary Judgment."
Appellant's sole contention is that the trial court erred in granting appellees' motion for summary judgment.
The standard for determining a motion for summary judgment is well-established in Ohio. In order for a summary judgment to be granted, the moving party must prove:
 ". . . (1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385.
The Supreme Court stated in Dresher v. Burt (1996), 75 Ohio St.3d 280,296:
 "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. . . ." (Emphasis sic.)
If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. Id. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "[w]e review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Linkv. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
In Fyffe v. Jeno's (1991), 59 Ohio St.3d 115, paragraph one of the syllabus, the Supreme Court articulated the three-part test to determine whether an intentional tort has occurred:
 ". . . (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."
Additionally, the court discussed the term "intent" as follows:
 "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. . . ." (Citation omitted.) Id. at paragraph two of the syllabus.
"The [employee] has the burden of proving by a preponderance of the evidence that the employer had `actual knowledge of the exact dangers which ultimately caused' injury. . . ." Sanek v.Duracote Corp. (1989), 43 Ohio St.3d 169, 172.
In the instant matter, when the manager of the gas station was deposed, she said that a couple of employees complained to her about working the third shift. However, she explained that no employees working the third shift mentioned that they were concerned about their safety. They only wondered why two people were not on duty during the third shift. The manager stated that there was no need for two people because sales in the late hours of the night were less than other periods during the day. Accordingly, appellant failed to satisfy her evidential burden regarding the first prong.
Assuming arguendo that appellant met the burden of the first prong and established that Foguth's employer knew of the existence of a dangerous condition, there was a lack of evidence concerning the second element of this cause of action. The second prong of the Fyffe test requires that appellant prove that appellees knew that harm was substantially certain to occur as a result of a dangerous situation. The critical issue is whether appellees knew that due to the number of incidents that occurred at the particular store, it was highly probable (substantially certain) that an employee would be injured in some manner similar to the injury which was actually sustained. Richie v. Rogers Cartage Co.
(1993), 89 Ohio App.3d 638, 644. We note "substantial certainty" can be established even where there has been no previous accident or injury involving the specific aspect of the workplace at issue in a case. Cook v. Elec. Illuminating Co. (1995), 102 Ohio App.3d 417,429-430.
In Emminger v. Motion Savers, Inc. (1990), 60 Ohio App.3d 14,17, the court held:
 "Proof of the employer's intent in the second category is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits. Even with these facts construed most strongly in favor of the employee as required by Civ.R. 56, the proof of the employer's intent must still be more than negligence or recklessness."
In Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, an employee was fatally shot while working alone at night in a Lawson's convenience store. The evidence adduced in that case revealed that the shop contained no alarms, cameras, or other security devices and Lawson did not provide its employees with any instructions for handling violent situations. The Supreme Court of Ohio stated that given the facts pleaded in the complaint, it was not possible for the plaintiff to prove an intentional tort, and thus, the complaint must be dismissed. Id. at 193. Specifically, the court held:
 "Even if Lawson failed to equip its stores with security devices or provide its employees with training in handling violent situations, it does not follow that Lawson knew that injury to its employees was certain, or substantially certain, to result. This is so, even if we assume that the Lawson store was in a high-crime-rate area.
". . .
 "We hold that a claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still proceeded." Id. at 192-193.
In the case sub judice, it is clear that appellant did not allege facts that showed that appellees desired to hurt Foguth, or that appellees knew that injury to Foguth was certain or substantially certain to result. However, even if appellees knew that there was a potential for crime at their store, the unrefuted evidence, unlike the Mitchell case, demonstrates that the store contained a closed circuit camera, a silent alarm, and signs posted indicating that there was a camera. Further, the employees, including Foguth, were trained in handling themselves during a robbery. They never mentioned that their concern about working the third shift was for their safety.
Additionally, despite evidence showing prior criminal activity at the gas station, the trial court determined that there were no violent crimes committed. In evaluating the store's record of past criminal activity, there was a plethora of nonviolent crimes that occurred. However, the trial court focused on the robberies that involved weapons and injuries and found that of the two robberies that occurred before the Foguth incident, there were no injuries and no weapons used.
Moreover, we note that in her brief, appellant cites Bryant v.Lawson Milk Co. (1985), 22 Ohio App.3d 69, where the plaintiff was assaulted, beaten, and raped while working alone in a Lawson store. However, that case is factually distinguishable from both the Mitchell case and the case at hand.
It is our view that the trial court's decision correctly applied the Fyffe three-prong test to the facts of this case. Therefore, we conclude that the trial court did not err in granting summary judgment in behalf of appellees.
Moreover, appellant claims that appellees owed a duty to protect Foguth because they retained dominion and control over the property. The action filed against appellees as tenants in common was not based on intentional tort, but was based on negligence for their failure to provide adequate security. An action in negligence requires a showing of a duty, a breach of that duty, and that the breach proximately caused an injury. Chambers v. St.Mary's School (1998), 82 Ohio St.3d 563, 565.
Appellees, as individuals, were not in possession of the premises, and hence, owed no duty. Instead, they leased the premises where the Duke and Duchess Shoppe was located to appellee Englefield, Inc. Furthermore, when appellees Fredrick William Englefield, III, Fredrick William Englefield, IV, and Benjamin B. Englefield were deposed, they referred to their respective power and authority as officers and directors of appellee Englefield, Inc., and not as individual owners of the leased property. Consequently, since appellees, as individuals, owed no duty because they were not in possession of the leased premises, the trial court did not err in granting summary judgment in appellees' favor. Additionally, there was no effort on the part of appellant to pierce the corporate veil. Hence, appellant's argument lacks merit.
For the foregoing reasons, appellant's assignment of error is not well-taken, and the judgment of the Portage County Court of Common Pleas is affirmed.
 _________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] We will refer to Brian Foguth as "Foguth;" Englefield, Inc., Englefield Oil Company, Inc., d.b.a. Duke and Duchess Shoppe, Fredrick William Englefield, III, Fredrick William Englefield, IV, and Benjamin B. Englefield as "appellees;" and Melanie Jarrell as "appellant."
[2] Appellees, Fredrick William Englefield, III, Fredrick William Englefield, IV, and Benjamin B. Englefield, owned the real estate the store was situated on as tenants in common.
[3] The majority of the facts are adduced from evidence the parties provided through discovery, including depositions and affidavits of store managers and officers.