BEE et al., Appellants,

v.

TOTH INDUSTRIES, INC., Appellee, et al.

[Cite as *Bee v. Toth Industries, Inc.,* 150 Ohio App.3d 184, 2002-Ohio-6240.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–02–1009.

Decided Nov. 15, 2002.

Steven P. Collier, Anthony E. Turley and Jason A. Hill, for appellants.

Marc J. Meister, for appellee.

_____

JAMES R. SHERCK, Judge.

{¶ 1} This is an appeal from a summary judgment issued by the Lucas County Court of Common Pleas against an employee in an employer intentional tort claim. Because we conclude that the employee submitted sufficient evidence to raise a question of fact concerning substantial certainty of injury, we reverse.

{¶ 2} Appellee, Toth Industries, Inc., is a manufacturer of auto components. Appellant, Edward A. Bee,[1] was a 15–year employee of appellee when, in 1999, he fractured his ankle on the job.

{¶ 3} Appellant is a diabetic with an associated condition known as neuropathy, a lack of feeling or sensation in his feet. Because of this condition, appellant was at increased risk for blisters and infection associated with wearing a cast.

{¶ 4} On January 14, 1999, an orthopedic surgeon set appellant's fractured ankle and applied a short cast. Appellant was ordered off the foot. He remained off work until April 5, 1999. At that time, appellant's physician received a fax from Bob McCullough, appellant's shift supervisor, seeking permission for appellant to return to work. McCullough characterized the work to which appellant would be assigned as "light duty." Specifically, McCullough described appellant's proposed work duties as "data entry work and other desk type work at a computer station. This will require Ed to walk to his working area. At this point he will be able to sit in a chair during his working hours."

{¶ 5} Appellant's physician approved work release under the conditions stated and returned the proposal to McCullough. Appellant then returned to work on April 7. It is undisputed that neither the physician nor appellant ever informed appellee or its agents of appellant's neuropathy or the special risks it posed.

{¶ 6} During his first week back at work, except for an errand outside the plant, appellant was assigned to data entry as indicated in his physician's release. During the second week, appellant was, however, assigned to do "timing checks" on manufacturing machinery on the plant floor. Although appellant was able to conduct these checks while seated, it is undisputed that he was required to walk from machine to machine to perform this work. The exact distance appellant was required to walk is not clear from the record.

{¶ 7} Following two days of machine timing, appellant was fitted for an ankle brace. The fitter found a blister on appellant's heel and advised appellant to immediately contact his physician. Appellant's physician ordered him off the foot for four days, then permitted him to return to work with the instruction that appellant be restricted to a "sit down job only."

{¶ 8} Appellant returned to work on April 20, 1999, but, despite the physician's written restrictions and appellant's own protests, was again assigned to perform timing checks on the shop floor. This assignment continued through April 22.

---

1. Edward Bee's wife, Judy Bee, is also an appellant by virtue of a loss-of-consortium claim. For clarity, we shall refer to Edward Bee as the appellant.

{¶ 9} Appellant alleges that the walking from these three days on the floor caused a blister on his foot to become severely infected. As a result, appellant's left foot was amputated.

{¶ 10} Appellant then sued appellee,[2] alleging an intentional employer tort. Following discovery, the matter was submitted on cross-motions for summary judgment. On December 17, 2001, the trial court concluded that appellant failed to meet his burden to show "substantial certainty" of harm. The trial court granted summary judgment in favor of appellee and denied appellant's cross-motion. This appeal followed.

{¶ 11} Appellant sets forth the following sole assignment of error:

{¶ 12} "The trial court erred in granting defendant Toth Industries, Inc.'s motion for summary judgment."

{¶ 13} On review, appellate courts employ the same standard for summary judgment as do trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

{¶ 14} "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery* (1984), 11 Ohio St.3d 75, 79, 11 OBR 319, 463 N.E.2d 1246. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186; *Needham v. Provident Bank* (1996), 110 Ohio

---

2. The Ohio Bureau of Workers' Compensation was initially a codefendant but was later dismissed from the case.

App.3d 817, 826, 675 N.E.2d 514, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 16} Workers' compensation provides relief for employee injuries on the job and limits an employer's liability for workplace injuries. Under the system, an injured employee is compensated irrespective of fault. Keeton, Prosser & Keeton on Torts (5th Ed.1984) 573–574; Fulton, Ohio Workers' Compensation Law (2d Ed.1998) 13–21. Employers who comply with Ohio's workers' compensation statutes are immune from suit for an employee's injury or disease acquired in the course of or arising out of employment. R.C. 4123.74. Excepted from this arrangement, however, is an act committed by an employer wherein the employer intentionally injures the employee. *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582; *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 630, 576 N.E.2d 722. Such an act is outside the purview of the workers' compensation statute. Id.

{¶ 17} In order to establish the "intent" necessary to sustain an employer intentional tort, a plaintiff must show:

{¶ 18} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 19} While ordinarily the *Fyffe* test is applicable to workplace conditions that may be universally hazardous, such as toxic chemicals or dangerous equipment, it may also be reasonably construed to apply to dangers which are idiopathic. *Sinea v. Denman Tire Corp.* (1999), 135 Ohio App.3d 44, 58, 732 N.E.2d 1033, discretionary appeal not allowed in (2000), 88 Ohio St.3d 1415, 723 N.E.2d 120; see, also, *Tulloh v. Goodyear Atomic Corp.* (1994), 93 Ohio App.3d 740, 639 N.E.2d 1203. Thus, an employer who forces its employee to work in an environment that violates the employee's valid medical restriction may be found to have intended to harm the employee. *Sinea,* supra.

{¶ 20} In this matter, the trial court concluded that appellee was aware that if appellant worked in violation of the specific medical restriction imposed by his physician, injury might follow. The court concluded that this gave rise to a question of fact concerning the first prong of the *Fyffe* test.

{¶ 21} The trial court, nevertheless, concluded that because appellant's injury was not the "exact danger" to which the medical restriction apparently applied,

appellee did not have knowledge that there was a "substantial certainty" that appellant would be injured in the manner in which he was.

{¶ 22} The court further concluded that, on the information that appellant's supervisor had, he could reasonably assume that appellant's restrictions were intended to promote the healing of his fractured ankle. Given this understanding, it was, therefore, reasonable to broadly interpret the proviso that appellant could "walk to his working area" as leave to require that appellant walk between machine groupings as he timed the machinery. Consequently, appellee did not knowingly require appellant to perform the dangerous task, except with respect to the single trip out of the plant. Moreover, the court concluded, since the trip outside the plant was three weeks before the onset of infection, appellant could not show proximate cause as a matter of law.

{¶ 23} The trial court begins its analysis of the "substantial certainty" prong of the *Fyffe* test with reference to the standard articulated by this court in *Richie v. Rogers Cartage Co.* (1993), 89 Ohio App.3d 638, 644, 626 N.E.2d 1012. There we stated:

{¶ 24} "The difficult issue in any employer intentional tort case is the degree of risk the employer can take before its conduct is legally considered to be, or can legally be inferred to be, an intentional act to injure. The employee need not prove that the employer had an actual subjective intent to cause the injury sustained or that the employer knew that the exact injury sustained would occur. [*Fyffe*] at 117, 570 N.E.2d 1108. However, the mere knowledge and appreciation of a risk is not enough. *Id.*, paragraph two of the syllabus. The employee must prove that the employer knew that because of the exact danger posed, the employee would be harmed in some manner similar to the injury sustained or that the employer knew that because of the exact danger posed, it was highly probable (substantially certain) that the employee would be harmed in some manner similar to the injury sustained. *Id.*"[3]

{¶ 25} In the end, the trial court concluded that because appellee did not know the "exact danger posed" (neuropathy) that it was not substantially certain that appellant would be harmed in a manner similar to the injury sustained.

{¶ 26} The difficulty with the trial court's analysis arises from the translation of the *Fyffe* test from an environmental context to an idiopathic context. *Fyffe* and *Richie*, indeed most workplace intentional torts, are environmental hazards, e.g., *Fyffe*, supra (removal of a safety guard); *Richie*, supra (improperly ventilat-

---

3. The "exact danger" and "similar manner" language does not appear in *Fyffe*. Indeed, *Fyffe* holds that a need for a "finding that the employer had knowledge of the harm that might befall the injured employee" is a misinterpretation of the law. *Fyffe*, 59 Ohio St.3d at 117, 570 N.E.2d 1108.

ed cleaning area for flammable materials); *Vermett v. Fred Christen & Sons* (2000), 138 Ohio App.3d 586, 741 N.E.2d 954 (industrial press operated against express manufacturer warnings). These conditions may harm any employee unfortunate enough to be in the wrong place at the wrong time. When an employer knows of such a condition and is aware that some type of resulting injury to someone is substantially certain, this is the intent necessary to establish an employer intentional tort. *Fyffe* at paragraph two of the syllabus. The missing guard or poor ventilation or improper procedure is the "exact danger" posed from which "some manner" of injury occurs.

{¶ 27} Medical restrictions, however, are inherently idiopathic. A condition or a substance or a practice that is perfectly benign for most employees becomes harmful to a specific employee because of that employee's specific condition, e.g., *Sinea*, supra (back injury required lifting restrictions); *Tulloh*, supra (employee should not be exposed to certain chemicals because of prior bacterial infection); *Raines v. Rubbermaid, Inc.* (1996), 112 Ohio App.3d 384, 678 N.E.2d 988 (shoulder injury required lift restrictions and no duties with repetitive motions). With a medical restriction, it is the violation of the restriction itself that poses the "exact danger" from which "some manner" of injury occurs. To hold otherwise would be to permit an employer to substitute its lay opinion of an employee's medical condition for that of a physician.

{¶ 28} Such a substitute of judgment appears to be what happened in this case. In his deposition testimony, appellant's immediate supervisor, Bob McCullough, testified that he was not aware of appellant's neuropathy. McCullough believed that requiring appellant to walk between work stations several times during the day posed no greater risk than that appellant's fractured ankle might not set properly. McCullough, nevertheless, did have knowledge of the medical restriction, the violation of which was the "exact danger" posed to his employee. Appellant presents evidence which, if believed, would establish that McCullough, as appellee's agent, required appellant to work in violation of his medical restriction. That violation caused the blister that led to the infection that caused appellant's foot to be amputated. Such evidence gives rise to disputed facts that preclude summary judgment.

{¶ 29} Accordingly, appellant's sole assignment of error is well taken.

{¶ 30} Appellee has interposed a conditional assignment of error, pursuant to R.C. 2505.22, in support of affirmance. Appellee contends that the trial court considered portions of appellant's expert medical testimony in violation of Evid.R. 702 and 703. Specifically, appellee argues that the court should not have considered the opinion of appellee's treating physician that if appellee was required to walk on the job that it was "substantially certain" that he would develop an ulcer on his foot which would lead to amputation. Such testimony

does not require an expert or, alternatively, is beyond the treating physician's expertise, according to appellee.

{¶ 31}   With or without the treating physician's testimony on this issue, there is sufficient evidence to create a question of fact with respect to causation. Therefore, we decline appellee's invitation to enter an interlocutory ruling on an evidentiary question.   The question of the proper scope of expert testimony is not yet ripe.

{¶ 32}   On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed.   This matter is remanded to that court for further consideration consistent with this decision.   Costs to appellee.

Judgment reversed
and cause remanded.

MARK L. PIETRYKOWSKI, P.J., and RICHARD W. KNEPPER, J., concur.