OPINION
{¶ 1} Appellant Lamont R. English appeals the decision of the Mahoning County Court of Common Pleas to grant Appellee General Electric Company's motion for summary judgment. The record reflects no genuine issue of material fact in this case, and the decision of the trial court is affirmed.
 {¶ 2} Appellant was employed by Appellee as an universal utility operator for at least three years prior to the incident giving rise to this lawsuit. As universal utility operator, Appellant filled in for other employees absent from the job. Appellant's position required him to be trained for numerous jobs at the facility, including that of electric coiling machine operator. (English Depo., pp. 6-12.)
 {¶ 3} On January 11, 2001, Appellant was working at several primary coiling machines. On that same date, Gary Bayless, Appellee's electronics maintenance technician, was cleaning and servicing the front component compartment drawers of the machines. (Bayless Depo., p. 12.) Appellant was injured following the servicing of a machine.
 {¶ 4} Bayless testified at deposition as to his servicing procedure on the machine operated by Appellant. After turning the machine's power off, Bayless removed the component drawer and the circuit boards. Bayless then used an aerosol spray tuner cleaner, ElectrO-Wash PX, to clean the components. He reinstalled the drawer and turned on the power. (Bayless Depo., p. 13.) Bayless advised Appellant that he could use the machine after Bayless was done cleaning it. Appellant pushed the start button while standing in front of the machine. A spark apparently ignited the cleaning spray vapors that were trapped in the drawer of the machine. The drawer shot open striking Appellant in the stomach and hand. (English Depo., pp. 21-22.) As a result, Appellant suffered personal injuries and sought medical treatment.
 {¶ 5} Following the incident, Appellee investigated the cause of the explosion and resulting injuries to Appellant. Appellee's investigation determined that the incident occurred because the technician used the spray cleaner improperly. The container was labeled "flammable" and the cleaner was not to be sprayed into closed areas. The technician did not allow ample time for the cleaner vapors to evaporate before closing the component drawer. (Bayless Depo., pp. 20-21.)
 {¶ 6} The warnings applicable to the use of ElectrO-Wash PX state that the product is extremely flammable; that it is to be used with adequate ventilation; and that it is not to be used near open flames, extremely hot surfaces, or other sources of ignition. (Bayless Depo., pp. 36-37.)
 {¶ 7} In addition, the drawer containing the circuit board that struck Appellant was originally secured to the machine by two safety screws. The screws are designed to hold the circuit board inside the machine. In the present case, the screws had been removed from the drawer. (Bayless Depo., p. 49.) There is no indication in the record how long the screws had been missing or who removed them. There is no indication whether Appellee knew or should have known some of the screws were missing on some machines. Bayless concedes in his deposition that had the screws been in place, they likely would have impeded the force of the drawer, but he could not state that the proper placement of these screws would have prevented the incident entirely. (Bayless Depo., pp. 50-51.)
 {¶ 8} Further, Appellant cannot recall that he noticed whether screws were missing on any coiling machines before this accident. Appellant states he was advised after the accident that had the screws been in place at the time of the accident, then, "the drawer would have most likely blown down as opposed to blowing out." (English Depo., p. 43.) Notwithstanding, there is no evidence relative to whether proper placement of these screws would have prevented the accident and Appellant's injuries altogether.
 {¶ 9} Following the incident, Appellee removed the flammable spray cleaner from further use and substituted a non-flammable alternative product. Appellee also ordered that the screws be replaced in all coiling machines. (Bayless Depo., pp. 26-27, 30.)
 {¶ 10} On January 8, 2002, Appellant filed a complaint alleging employer intentional tort against Appellee, David Chapman, and a John Doe. On January 10, 2003, Appellant filed an amended complaint voluntarily dismissing Defendants Chapman and Doe, and adding a products liability claim against Illinois Tool Works, Inc.
 {¶ 11} Appellee filed a motion for summary judgment. Appellant filed in opposition to the motion. Appellee filed a reply.
 {¶ 12} On March 17, 2003, the trial court granted summary judgment in favor of Appellee. Appellant's products liability claim against Illinois Tool Works, Inc. is still pending. Because the products liability claim is still pending, the trial court amended its judgment entry on July 2, 2003, by adding the language, "no just cause for delay," thus making the decision to grant summary judgment a final appealable order. Civ.R. 54(B). On August 1, 2003, Appellant filed this timely appeal.
 {¶ 13} Appellant's sole assignment of error asserts:
 {¶ 14} "The trial court erred in granting summary judgment in favor of appellee, general electric company."
 {¶ 15} Appellant argues that the trial court erred in granting summary judgment because he established all the facts necessary to state a cognizable claim of intentional tort. For the following reasons, we disagree.
 {¶ 16} Summary judgment is proper only when the trial court determines that: "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to only one conclusion, and viewing the evidence most strongly in favor of the non-movant, the conclusion is adverse to that party." Gross v. Fizet (Dec. 18, 2001), 7th Dist. No. 00-C.A.-250, 3, citing Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267; Civ.R. 56.
 {¶ 17} The party seeking summary judgment must provide the basis for its motion and identify the parts of the record that demonstrate it is entitled to judgment as a matter of law.Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264. The movant must also identify the evidence tending to show that no genuine issue of material fact exists with respect to the essential elements of the opposing party's claim.Dresher at 293, 662 N.E.2d 264.
 {¶ 18} Where the initial burden is met, the responding party must demonstrate that genuine issues exist for trial. Lovejoy v.Westfield Natl. Ins. Co. (1996), 116 Ohio App.3d 470, 474,688 N.E.2d 563. To withstand summary judgment, the opposing party must specify facts supporting the elements of the claim it expects to prove. Dresher at 293, 662 N.E.2d 264. The trial court looks at this information in a light most favorable to the party opposing summary judgment. Civ.R. 56(C). Only when this examination reveals no disputed factual issues is summary judgment proper. Nice v. Marysville (1992), 82 Ohio App.3d 109,116-117, 611 N.E.2d 468.
 {¶ 19} An appellate court subjects a trial court's decision to grant summary judgment to non-deferential, de novo review.Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153. In determining whether a case is properly resolved by way of summary judgment, neither the reviewing court nor the trial court is entitled to, "weigh the proof or choose among reasonable inferences in deciding whether summary judgment should be granted." Wilson v. Lafferty Volunteer Fire Dept.
(Nov. 29, 2001), 7th Dist. No. OO BA 29, 3, citing Perez v.Scripps-Howard Broadcasting Co. (1988), 35 Ohio St.3d 215, 218,520 N.E.2d 198.
 {¶ 20} Although Ohio's workers' compensation provisions provide employees with the primary means of compensation for injury suffered in the scope of employment, our Supreme Court has recognized a common law cause of action by an employee against the employer when the employer's conduct is sufficiently egregious to constitute an intentional tort. Hannah v. DaytonPower Light Co. (1998), 82 Ohio St.3d 482, 484,696 N.E.2d 1044. Such conduct is considered as occurring outside the scope of the employment and, necessarily, beyond the bounds of the workers' compensation act. Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 433 N.E.2d 572.
 {¶ 21} Because of the nature of the claim, an employee can prevail in an intentional tort against his employer only if he demonstrates, (1) that the employer had actual or constructive knowledge that a dangerous process, instrumentality, or condition existed at the workplace; (2) that the employer knew that if the employee was subjected to such a workplace danger, it was substantially certain to cause harm; and (3) that despite such knowledge, the employer required the employee to perform the dangerous task or work under that dangerous condition. Dailey v.Eaton (2000), 138 Ohio App.3d 575, 581, 741 N.E.2d 946, citingFyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, paragraph five of the syllabus.
 {¶ 22} However, work that is considered generally dangerous must be distinguished from an otherwise dangerous condition that arises within that work. Naragon v. Dayton Power Light Co.
(Mar. 30, 1998), 3rd Dist. No. 17-97-21, 7, citing Brady v.Safety-Kleen (1991), 61 Ohio St.3d 624, 631, 576 N.E.2d 722.
 {¶ 23} Injuries that occur in the scope of employment, by definition, are not intentional torts. Id. "`A workplace intentional tort is one suffered outside the scope of employment, beyond the "natural hazards" of one's employment. Were it otherwise, any injury associated with inherently dangerous work,' like high voltage electrical work or, * * * work involving explosives, `could subject an employer to intentional tort liability, whatever the cause.'" Caldwell v. Petersburg StoneCo., 7th Dist. No. 02CA8, 2003-Ohio-3275, ¶ 40; Naragon at 7.
 {¶ 24} To satisfy the first element of employer intentional tort, Appellant must show that a dangerous condition existed, and Appellee knew about the danger. To determine whether the employer had knowledge of the dangerous condition or procedure, a court must determine the extent of the employer's actual knowledge of the danger. Fultz v. Baja Boats, Inc. (Feb. 18, 1994), 3rd Dist. No. 3-93-10.
 {¶ 25} "However, the `reasonable person' standard for determining negligence or recklessness is not used in this process. The fact that the employer might or should have known that if it required the employee to work under dangerous conditions the employee would certainly be injured is not enough to establish a case for intentional tort. Rather, the determination turns on whether the plaintiff alleges facts showing the employer possessed actual or constructive knowledge of the dangerous situation." Caldwell, supra at ¶ 41.
 {¶ 26} In the present case, Appellant operated an electronic coiling machine. Aware of the label on the product warning of the chemical's flammability, Appellee's technician used ElectrO-Wash PX to clean the electronic coiling machines. The ElectrO-Wash PX container was clearly labeled "flammable" and instructed not to spray the chemical near ignition sources. (Bayless Depo., pp. 36-37.)
 {¶ 27} Viewed in a light most favorable to Appellant, the record indicates that reasonable minds could determine that use of the product at the site of the incident might present a "dangerous condition" as that term is understood in the context of employer intentional torts above and beyond the hazard in Appellant's work. Evidence was presented in the technician's deposition that Appellee had or should have knowledge that the incorrect use of ElectrO-Wash PX could create a danger to its employees. Therefore, it can be argued that the first prong necessary to maintain an intentional tort was established, at least for purposes of summary judgment.
 {¶ 28} Appellant urges that we stop our review at this point. He urges that Appellees' use of the chemical, in and of itself, required the trial court to rule in his favor. Appellee is mistaken in this regard. The use of an arguably dangerous product, taken alone, does not give rise to an intentional tort. Appellant must also present evidence of the second prong of the test.
 {¶ 29} The second element requires an employee to prove that the employer knew the employee's exposure to the dangerous condition was substantially certain to cause harm. Fyffe,59 Ohio St.3d 115, at paragraph one of the syllabus. Because many jobs expose employees to dangerous conditions or materials, "substantial certainty" is more than an employer's mere knowledge that such a condition presented a high risk of harm or danger.Cope v. Salem Tire, Inc., 7th Dist. No. 2001 CO 10, 2002-Ohio-1542. However, Appellant need not demonstrate that the employer actually intended the exact harm to occur. Van Fossenv. Babcock Wilcox Co. (1998), 36 Ohio St.3d 100, 117,522 N.E.2d 489. Appellant must show that the employer's actions were more than merely negligent, or even reckless. What actually constitutes a "substantial certainty" varies from case to case. Id.
 {¶ 30} As the probability or likelihood of harm increases, and the employer knows that injury to an employee is certain or substantially certain to result from a particular activity, the law treats the employer as if he intended to cause the harm if the employer proceeds with the activity despite such knowledge.Brookover v. Flexmag Industries, Inc., 4th Dist. No. 00CA49, 2002-Ohio-2404. Appellee must know, "* * * that because of the exact danger posed, it was highly probable (substantially certain) that the employee would be harmed in some manner similar to the injury sustained." Bee v. Toth Industries, Inc.,150 Ohio App.3d 184, 2002-Ohio-6240, 779 N.E.2d 1078, at ¶ 24, citingFyffe, 59 Ohio St.3d 115, 117, 570 N.E.2d 1108.
 {¶ 31} In Hartley v. Marion Steel Co. (Oct. 4, 1996), 3rd Dist. No. 9-96-30, an employee was killed during an explosion caused by a molten steel spill. The spill occurred even though the employer had established safety procedures for the transportation of molten steel. No one had been injured in any similar manner in the mill's thirteen-year history. During the accident, a cradle transporting molten steel broke and the steel exploded. The court reasoned that because the employer had established and followed its safety plan, "[The company] appreciated the risk that molten steel or other objects falling several feet onto employees would be dangerous, and attempted to avoid this type of accident." Id. at 4.
 {¶ 32} The Third District Court of Appeals decided that the Appellant's injury was not substantially certain. Id. at 11. It found that the company, "may have been negligent[,]" but it concluded that Hartley's death was not such a substantial certainty that the company acted with intent. Id. at 4. Thus, summary judgment was affirmed.
 {¶ 33} In Richie v. Rogers Cartage Co. (1993),89 Ohio App.3d 638, 644, 626 N.E.2d 1012, an employee was injured during an explosion caused by the ignition of flammable vapors. The explosion occurred because adequate precautions against the ignition of flammable vapors were not taken. The employee was using a cleaning product, which had the following warnings:
 {¶ 34} "`Forms combustibles and/or explosive mixtures with air' and has a flash point of twenty-five degrees Fahrenheit. * * * in case the material is released or spilled, one should `[r]emove all ignition sources. Ventilate enclosed spaces. Avoid breathing vapor.' * * * `Keep away from heat, sparks and open flame. Keep container closed.'" Id. at 644-645.
 {¶ 35} Despite these express warnings, there were no procedures regarding the proper methods of cleaning various substances from the tank interiors, nor were there any safety instructions with regard to the various chemical cleaners. In addition, any safety procedures or materials that were originally put into place were not being followed or utilized: although the cleaning bay had a fan, it had not worked in years; employees were not advised to keep the bay doors open; and the lights used to illuminate the tank's interior were standard lights whereas the company had previously provided explosion-proof lights. Further, at the company's Indiana terminal, the employees cleaned the trucks outside, and the employees there had specialized equipment so they did not have to physically enter the tanks. Id. at 645. All of the above reflects evidence that the company certainly had knowledge of the danger posed by the employee's method of cleaning.
 {¶ 36} The Richie court found that the employer required the employee in question to use the cleaning product without providing the information, equipment, or environment necessary to use the product safely. Id. It concluded that sufficient evidence was before the trial court to support a finding that the employer knew that if its employees were required to use a highly volatile solvent with the equipment and in the environment provided, injury to those employees was substantially certain to occur. Id. Thus, the Sixth District Court of Appeals reversed and remanded summary judgment. Id. at 640.
 {¶ 37} In the present case, like Hartley, Appellee had established safety procedures for the application of ElectrO-Wash PX. Appellee's technician would turn off the coiling machine, open the drawer, spray the cleaner, wait for the fumes to evaporate before closing the drawer, and then turn on the machine. The technician had performed this procedure for twenty years without a problem. He had even performed the exact same task without incident on several machines the day of the accident. However, the technician in this instance erred by apparently not allowing ample time for the vapors to evaporate before closing the component drawer. (Bayless Depo., pp. 13, 20-21, 51.)
 {¶ 38} Here, as in previous cases, the absence of prior accidents is a strong indicator as to whether an employer knew that an injury was substantially certain to occur. Foust v.Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451, 455,646 N.E.2d 1150; Taulbee v. Adience (1997), 120 Ohio App.3d 11, 20,696 N.E.2d 695. "* * * [T]he absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result * * *". Id. This absence alone, however, is not outcome determinative. Cook v. Cleveland Elec. Illum. Co.
(1995), 102 Ohio App.3d 417, 429-430, 657 N.E.2d 356.
 {¶ 39} In the matter before us, Appellee had an established safety procedure in place. Appellee had a lengthy, established record that there were no prior incidents with the product or the procedures. While certain safety screws were missing on the machine, there is no indication as to when these were removed or that the employer knew they were removed. Further, the only evidence in the record regarding their absence is that, while the impact may not have been as severe, there was no way to be certain the accident would not have happened had they been in place. There is nothing in the record which would indicate that the employer acted with anything more than negligence in this matter. Considering all the relevant facts as presented by Appellant, Appellee did not know that Appellant was substantially certain to sustain harm for purposes of an intentional tort claim. Dailey, 138 Ohio App.3d 575, 581, 741 N.E.2d 946. Therefore, Appellant failed to satisfy the second prong necessary to maintain an intentional tort. Id.
 {¶ 40} The third and final element essential for sustaining such a claim requires proof that the employee was given no choice but to perform the dangerous task. Id. It can be inferred that Appellant was required to turn on the coiling machine as part of his task of being an operator. No one can argue that the mere fact of turning on the machine was, itself, dangerous. Apparently, Appellant was told to turn on the machine too early; before the chemical fumes had evaporated. Neither side in this matter has really addressed this prong, thus, it appears to have been conceded. However, since this record reflects that Appellant's injury was not substantially certain to occur for purposes of an intentional tort claim, and since all three elements must be present, the claim must fail.
 {¶ 41} Appellant did not demonstrate that he was required to perform work that his employer knew was so dangerous that it rises to the level of an intentional tort. Accordingly, Appellant has not presented evidence sufficient to raise questions of material fact to withstand summary judgment on his claim against his employer.
 {¶ 42} Considering the record in a light most favorable to Appellant, the record reflects that there are no disputed questions of fact sufficient to withstand summary judgment as to his intentional tort claim. As such, the trial court's decision is affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.